MONROE, C. J.
Defendant prosecutes this appeal from a judgment condemning him to pay plaintiff $4,192.50, with interest, and sustaining a writ of. attachment which plaintiff had caused to be issued.
The cause of action set forth1 by plaintiff is as follows: That in 1906, defendant, being then about to acquire a certain interest in a newspaper called the Daily Item, entered into a contract whereby he agreed, in consideration of plaintiff assuming the duties of managing editor of said paper, to pay him 6% per cent, of the stock which defendant then held and should thereafter acquire in the Item Company, it being understood, however, that for defendant’s convenience the stock should be carried in his name; that plaintiff accordingly entered at once upon the discharge of the duties of managing editor, and has continued to discharge them up to the present time; that on May 21, 1910, defendant sold his entire interest in said paper to James M. Thompson for $76,500, and that *270 plaintiff is now entitled to 6% per cent, of that amount, or $4,192.50, with interest from judicial demand. Further alleging that defendant is a nonresident, plaintiff caused a writ of attachment to issue, and defendant obtained the release of the seizure made thereunder by furnishing bond as provided in such cases.
On an exception of vagueness, plaintiff amended his original petition by alleging that the contract sued on was verbal.
Defendant at first filed a general denial, and then an amended answer, alleging as follows, (quoting in part):
“He admits that plaintiff was to receive 10 per cent, of 65 per cent, of the capital stock of the Item Company, held by said Frederick I. Thompson and James M. Thompson; half from defendant and half from James M. Thompson.”
Further answering, he alleges:
“That on the balance sheet of the said Item Company from January 1, 1909, to December 31, 1909, * * * plaintiff drew from the said company five per cent, of the profits, and the item appears on said balance sheet in the language following, to wit:
“ ‘Marshall Ballard, bonus account,
to Jan. 1, 1910.................$3,349.40’
“That the said amount was illegally withdrawn; that half of it was the property of defendant, and the withdrawal was protested against by said defendant at the time. Defendant specially pleads, as compensation or set-off to whatever amount may be found [due] by defendant to plaintiff, for [the] half of said sum, or $1,674.70.”
' On th'e trial of the case, defendant gave the following, with other, testimony concerning the foregoing admissions:
“Q. You have made, in your answer, an admission that he was to have 10 per cent, of 65 per cent, of the stock? A. He wras to have a percentage of stock. * * *
“Mr. Marr (counsel for plaintiff): Of course, it is no use to go back into this, Mr. Thompson. You have admitted it in your answer, what the contract between you and Mr. Ballard was; so it is ño use to go beyond that. We consider that absolutely settled.
“Mr. Parkerson (counsel for defendant): We stand on that.
“Mr. Marr: You stand on that; I stand on it.”
Then, after some • further testimony, we find this apparently superfluous admission:
“It is admitted that the answer filed by Mr. Frederick I. Thompson admits that the plaintiff was to receive 10 per cent, of 65 per cent, of the capital stock of the Item Company, held by said Frederick I. Thompson and James M. Thompson, half from Frederick I. Thompson and half from James M. Thompson.”
Defendant, somewhat later, was asked how it happened that he made the foregoing admission in his answer, when he had taken a different position in the correspondence between him and plaintiff which preceded the bringing of the suit, and he testified as follows:
“I think that is very easily answered; because I have neglected to give to Mr. Parkerson, prior to the filing of his brief, the full information in my possession, already gone into. Q. You mean to say that the answer was filed by you under a misapprehension of facts? A. Yes, sir.
“Mr. Parkerson: Q. But you stand on your answer? A. Yes, sir.
“Mr. Marr: Q. Now, under date of Feb-
ruary 5, 1910 [about nine months before the institution of this suit] you appear to have written to Mr. Ballard as follows: ‘I have no desire to be precipitated into litigation, as any litigation involving the affairs of the Item Company would be far-reaching. I deny, without equivocation, any promise on my part to give any stock in the Item Company, or authorizing any one to make such a promise for me,’ etc. A. That is true. Q. How does it come about that this statement was made to Mr. Ballard on the 5th of February, 1910, when he was trying to get a settlement? A. Because I had never promised to give Mr. Ballard any stock in the Item Company.”
[1] There is no attempt to explain defendant’s admission, that plaintiff “was to receive” the stock, by saying that they meant that he was to receive it from some one else than defendant, and we hold the admission to be conclusive that he was to receive it from defendant, by virtue of a contract between them to that effect. It will be noted that 10 per cent, of 65 per cent, is equal to 6% per cent, of the whole. It is abundantly shown, and admitted, that according to the contract in question, as originally entered into, plaintiff was to receive a fixed salary of $50 per week, in addition to the stock, and *272 he and James M. Thompson testify that under a subsequent contract he was further to receive 5 per cent, of the net profits of the business; but defendant denies, in his pleadings and his testimony, that he was a party to any such contract, or knew anything about it, until some time in October, 1909, when he was informed by plaintiff that the item “$3,349.40,” appearing on the balance sheet, represented money which had been credited to him on account of profits, and part of which he had drawn, whereupon defendant protested, and advised plaintiff that he was not entitled to such credit, and should return the money so drawn to the company. Whilst, however, the agreement as to the stock and as to the salary of $50 was entered into between plaintiff, on the one side, and the Messrs. Thompson, as the prospective purchasers of stock in a corporation, on the other side, the agreement as to the 5 per cent, of the profit, was a matter between the plaintiff and the corporation, and in order to entitle defendant, as a stockholder in the corporation, to recover money which he alleges has been illegally paid out by it, to the prejudice of his possible dividends, it would be necessary that the affairs of the corporation should be liquidated, and the responsibility for such illegal payment, if illegal it was, fixed upon him by whom it was authorized, and the money brought into the treasury of the corporation. It is quite clear that defendant cannot plead, in compensation of a debt due by him, a debt due by his creditor to a corporation of which he is a stockholder, since compensation takes place only “when it happens that both plaintiff and defendant are indebted to each other.” C. P. 366; Hen. Dig. vol. 1, p. 257, III.
[2] Beyond that, defendant testifies that he would not have invested in the stock of the Item Company if it had not been that James M. Thompson had agreed to take charge of the active management of the business, and it appears that, he and James M. Thompson having purchased a majority of the stock, and a new board of directors having been elected, and having elected James M. Thompson president of the company, it (the board) proceeded on January 7, 1907, to adopt a resolution authorizing and empowering him “to appoint any and all managers, clerks, and other employSs deemed necessary by him for the work of the corporation, and to fix salaries and compensation of all parties so employed,” and that, acting under the authority so conferred, he fixed the compensation of plaintiff at $50 per week, as had been previously agreed on, and added thereto 5 per cent of the prospective profits. The capital stock of the company, of the par value of $50,000,. was at that time held by James M. Thompson ($17,500), defendant ($15,000), and by 'a minority stockholder ($17,-500). Thereafter the Thompsons bought the minority of the stock, and divided the entire capital equally between them, and in April, 1910, defendant sold his half interest to James M. Thompson for the net amount of $64,500, upon which occasion he might, perhaps, have brought about some settlement of the claim, here set up, that James M. Thompson has allowed plaintiff the 5 per cent, of the profits without authority. As the matter stands, we are unable to discover in what respect the authority was lacking, nor does it occur to us that defendant has any reason to complain of the manner of its exercise, since James M. Thompson dealt with defendant’s interest as with his o,wn, the 5 per cent, credited and paid to ifiaintiff, having been deducted from profits that would otherwise have inured to him and defendant, share and share alike, and he has conveyed to plaintiff his proportion of the stock, the value of the remaining proportion of which plaintiff is now seeking to recover from defendant.
The judgment appealed from is therefore affirmed.